**The below described is SIGNED.**

**Dated: January 25, 2007**  _____
**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: <br><br> JUSTIN C. LAWSON, <br><br> Debtor. | Bankruptcy Number: 06-22766 <br><br> Chapter 13 |
| In re: <br><br> DOUGLAS D. BOYNTON and CHERYL L. BOYNTON, <br><br> Debtors. | Bankruptcy Number: 06-22812 <br><br> Chapter 13 |

**MEMORANDUM DECISION**

Justin Lawson (Lawson) and Douglas and Cheryl Boynton (the Boyntons) (collectively the Debtors) filed petitions under chapter 13 of the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA),[1] and confirmation of the Debtors' proposed plans is pending before the Court. The Debtors are above-median debtors according to their respective Form B22C calculations, yet line 58

---

[1] Future statutory references are to title 11 of the United States Code unless otherwise noted.

indicates that the Debtors also have negative monthly disposable income.  Both plans provide for a fixed monthly plan payment for less than 60 months and a pro rata return of only $500 to general unsecured creditors.  The chapter 13 trustee objected to confirmation of the Debtors' plans on two grounds: (1) that the plans for these above-median Debtors must continue for a full five years; and (2) that their plans must provide for the submission to the trustee of postpetition tax refunds received by the Debtors in addition to their monthly plan payments in accordance with pre-BAPCPA practice in the District of Utah.  The dispute requires the Court to determine both the significance of the "applicable commitment period" concept in § 1325(b)(4) for above-median debtors with negative monthly disposable income and the post-BAPCPA vitality of case law requiring the contribution of postpetition tax refunds as "projected disposable income" under § 1325(b)(1)(B).

The Court received evidence and heard argument at the confirmation hearings and took the matters under advisement.  The Court also accepted supplemental briefing, stipulations of facts, and further evidence and argument in both cases.  The Court has now considered the evidence properly before it, has judged the credibility of the witness, and has made an independent inquiry into applicable case law.  Now being fully advised, the Court hereby issues the following Memorandum Decision.

## I. FACTS

**A.     Lawson**

Lawson, an above-median debtor, filed a "pot" plan proposing payments of $650/month until "general unsecured allowed claims have been paid a sum total of $500 and all other administrative, professional fees, security interests, and priority portions of claims have been

paid per this plan."[2]  His Form B22C indicates a negative monthly disposable income of $65.69 on line 58.[3]  The plan contains no description of its anticipated length other than the following language: "If this plan requires more than 36 months to complete, then it shall be so extended and cause is found to exist for such extension.  In no event shall the plan payments continue beyond 60 months from the Confirmation date."  It appears that monthly payments will exceed 36 months but terminate well short of 60 months.

In contravention of pre-BAPCPA practice in the District of Utah, Lawson's plan does not provide for payment into the plan, as projected disposable income, of future tax refunds in excess of $1,000 received by Lawson during the term of his plan.[4]  Lawson's 1040 EZ federal return reflects gross income in 2005 of $42,533, and the parties stipulated that he received total 2005 tax refunds of $1,997.  Lawson's actual tax withholding from Form B22C for the six months prior to filing was $1,035.96/month, and that amount is listed on line 30 of Form B22C.  But

---

    [2]     Amended Ch. 13 Plan, p.2.

   [3]     Form B22C is the incarnation of the detailed statutory income and expense calculations in § 101(10A) and § 707(b)(2) that are incorporated into chapter 13 by § 1325(b) for above-median debtors.  The parties in these cases have not alleged that Form B22C does not accurately capture the relevant provisions of the Bankruptcy Code.  Accordingly, and for ease of reference, the Court will only discuss Form B22C with the understanding that it is merely a proxy for the requirements of the statute.

   [4]     Local practice has permitted debtors' retention of up to $1,000 in tax refunds received for any given tax year.  *See In re Leigh*, No. 03-33764 (Bankr. D. Utah Apr. 27, 2004) (Thurman, J.).  In accordance with the old "three-year" language of § 1325(b)(1)(B), the trustee would object to confirmation unless the debtor provided for submission of tax refunds received by debtors during the three years starting with the filing of the bankruptcy petition.  In the present cases, the trustee did not specifically advocate for five years of tax refund submission by these above-median Debtors but suggested that five years may well be statutorily required if the "applicable commitment period" concept in § 1325(b)(4) is temporal in nature.  The trustee did, however, express his intent to continue allowing debtors to retain the first $1,000 of their tax refunds if the tax refund submission requirement remains valid.

Lawson's Schedule I withholding based on income received within the 60-day period prior to filing increased to $1,501.00/month, apparently as a result of his increased income.

The parties dispute what figure should be included on line 30. Lawson argues that the appropriate figure is the full amount withheld from his paycheck, even though that figure may represent an overwithholding that would ultimately generate a tax refund. The chapter 13 trustee argues that Lawson must calculate the amount of his actual anticipated 2006 tax liability. To attempt to contrast the two approaches, the parties stipulated to submission into evidence of a chart prepared by Lawson's counsel that shows Lawson's estimated 2006 tax liability calculated in four different ways. The first set of tax liability estimates assumes Lawson would file a full Form 1040 using a standard deduction, and the tax figures estimated using this method are deducted from both Form B22C income and Schedule I income to arrive at total tax obligations for 2006. The second set of estimates is based on Lawson's completion of the personal allowances worksheet incorporated into Form W-4 (Employee's Withholding Allowance Certificate) without itemization, and again the tax figures estimated using this method are deducted from both Form B22C income and Schedule I income to arrive at total tax obligations for 2006. In Lawson's case, the two sets of numbers are identical because Lawson did not itemize and was entitled to only the $5,000 standard deduction. No matter which calculations are used and which tax expense number is ultimately inserted into line 30 of Form B22C, Lawson's monthly disposable income on line 58 of Form B22C would still be negative.[5]

---

[5] The trustee had also originally lodged an objection regarding Lawson's projected disposable income but specifically abandoned this issue at supplemental oral argument.

**B.      Boyntons**

The Boyntons, who are also above-median debtors, filed a "pot" plan identical to Lawson's in all relevant respects except that the Boyntons' plan proposes payments of only $220/month. It also appears that the plan will conclude just short of 60 full months. As with Lawson, the trustee objected to the Boyntons' failure to provide in their plan for the submission of future tax refunds to be received by them during the term of the plan. The trustee also objected that the Boyntons improperly calculated the actual tax expense that they are allowed to deduct on line 30 of Form B22C. The Boyntons' gross income reflected in their itemized Form 1040 return for 2005 was $78,607, and they received total tax refunds of $5,953 for the 2005 tax year. The Boyntons' actual tax withholding from Form B22C for the six months prior to filing was $1,544.51/month, and that amount is listed on line 30 of Form B22C. The Boyntons' Schedule I withholding for the 60-day period prior to filing, however, decreased to $1,463.00/month. Again, the parties stipulated to submission into evidence of a tax estimate chart prepared by the Boyntons' counsel detailing four different methods for calculating the Boyntons' estimated 2006 tax expense. In this case, however, the chart contained an additional column entitled "2006 Estimate per Trustee" whose main difference was the use of a $15,000 itemized deduction rather than a $10,000 standard deduction for calculating the Boyntons' estimated 2006 tax expense. No matter which calculations are used and which tax expense number is ultimately inserted into line 30 of Form B22C, the Boyntons' monthly disposable income on line 58 of Form B22C would still be negative.

## II.  DISCUSSION

**A.     Applicable Commitment Period**

The Court must first determine the applicable commitment period for above-median debtors with negative monthly disposable income as calculated by Form B22C.  Section 1325(b)(4) states that the "applicable commitment period"

> (A) subject to subparagraph (B), shall be—
>     (i) 3 years; or
>     (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—
>         (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>         (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>         (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and
>
> (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

As set forth in this definition, the applicable commitment period for above-median debtors is "not less than 5 years" unless "the plan provides for payment in full of all allowed unsecured claims over a shorter period."[6]  But although Lawson and the Boyntons are above-median debtors, both of their Form B22Cs result in a negative number for monthly disposable

---

[6] Interestingly, the applicable commitment period for above-median debtors can also be no *more* than five years under § 1322(d).

income on line 58. As a result, under this Court's recent decision in *In re Hanks*,[7] they are not required to return anything to their general unsecured creditors yet both plans voluntarily provide for a pro rata return of $500 to general unsecured creditors.[8]

These kinds of cases thus raise the question of whether and to what extent the "applicable commitment period" is actually "applicable." This Court agrees with those courts that have addressed similar situations and found that the applicable commitment period concept is "fundamentally irrelevant" in the context of above-median debtors with negative monthly disposable income on line 58 of Form B22C.[9] No purpose is served for either debtors or their creditors in requiring payments of $0/month to general unsecured creditors for any length of time, let alone five years.[10] The duration of Lawson's and the Boyntons' plans, therefore, "will be determined by other mandated payments such as those to secured creditors, priority creditors, administrative creditors and any chapter 7 reconciliation amount" in addition to their voluntary return of $500 pro rata to general unsecured creditors.[11]

---

[7] *In re Hanks*, - - - B.R. - - - -, No. 06-22777, 2007 WL 60812 (Bankr. D. Utah Jan. 9, 2007).

[8] The trustee specifically did not raise any issues of bad faith in these cases but left open the possibility of doing so in appropriate future cases. Accordingly, the Court declines to address at this time the scope or extent of good faith as it relates to either chapter 13 petition filing or plan confirmation. *See* § 1325(a)(3) and (7).

[9] *See, e.g.*, *In re Zirtzman*, No. 06-00015, 2006 WL 3000103 (Bankr. N.D. Iowa Oct. 4, 2006) (collecting cases); *In re Fuger*, 347 B.R. 94 (Bankr. D. Utah 2006) (Thurman, J.); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006); *In re Kagenveama*, No. 05-28079-PHX-CGC, slip op. at 4-5 (Bankr. D. Ariz. July 10, 2006).

[10] As noted earlier, both of the plans in these cases are expected to run at least 36 months, and the Boyntons' plan should run almost a full 60 months, even with a return to general unsecured creditors of only $500 pro rata.

[11] *Zirtzman*, 2006 WL 3000103 at *3 (quoting *Kagenveama*, slip op. at 5).

**B.      Tax Withholdings**

Second, the Court must address the issue of whether postpetition income tax refunds still constitute projected disposable income that must be contributed toward the Debtors' chapter 13 plans and the related issue of the correct amount to be included on line 30 of Form B22C. The chapter 13 trustee presented two alternative ways of preventing overwithholding and of reflecting the impact of tax refunds in projected disposable income calculations: (1) require that future tax refunds be contributed toward the plan as in pre-BAPCPA practice; or (2) permit debtors to deduct only their future tax expenses that are actually incurred on line 30 of Form B22C rather than the amount withheld from their income that ultimately generates a tax refund.[12] The Debtors argued both that they do not have to contribute their future tax refunds to the plan and that they are entitled to deduct the full amount withheld from their income as the tax expense on line 30 of Form B22C. They base this latter argument on the propositions that Congress' intent in line 30 was to determine how much money debtors actually have in their paychecks each month after taxes are withheld and that Form B22C "is all about hard numbers" and not "crystal ball" predictions about the size of future tax obligations.[13]

---

[12]    At the original confirmation hearing, the trustee had suggested a possible third alternative of counting tax refunds received during the § 101(10A) current monthly income period as additional income on Form B22C. The trustee did not pursue this third alternative at supplemental oral argument, and the Court deems this an abandonment of the position. Accordingly, the Court takes no view at this time on the scope or extent of the definition of "income" in § 101(10A).

[13]    Of course, the Debtors' tax obligations in these particular cases could be stated exactly now that the 2006 calendar year has passed but such precision would obviously be possible for only a subset of all chapter 13 debtors depending on the timing of their bankruptcy filings.

1.      **Contribution of Future Tax Refunds**

The first of the trustee's alternative arguments is that income tax refunds should continue to be contributed toward chapter 13 plans under the pre-BAPCPA authority of *In re Midkiff*.[14]  In *Hanks*, however, this Court adopted the historical interpretation of "projected disposable income" first set forth in *In re Alexander*.[15]  In so doing, this Court ultimately held that Form B22C, which includes income calculations based on a six-month prepetition average, is determinative of the return to general unsecured creditors for above-median debtors unless "special circumstances" can be shown under § 707(b)(2)(B).  This Court had not yet issued its *Hanks* opinion at the time of the supplemental oral argument in the present cases, but the trustee conceded even then that the submission of future tax refunds would no longer be statutorily required if this Court adopted the historical view of "projected disposable income" ultimately contained in *Hanks*.  The Court believes that this concession is correct.

The trustee urged the Court to adopt the reasoning of *In re Risher*[16] to find that tax refunds still constitute projected disposable income under § 1325(b)(1)(B), but *Risher* relies on

---

[14]     342 F.3d 1194 (10th Cir. 2003).  The Court notes that the Tenth Circuit's discussion of tax refunds as projected disposable income in footnote 4 is actually dictum, although the parties have not argued that *Midkiff* is anything other than controlling precedent.  A lengthier discussion of the pre-BAPCPA tax refund issue is contained in the Tenth Circuit Bankruptcy Appellate Panel's *Midkiff* opinion located at 271 B.R. 383 (10th Cir. BAP 2002).

[15]     344 B.R. 742; *see also In re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006).

[16]     344 B.R. 833 (Bankr. W.D. Ky. 2006).

the reasoning of *In re Jass*,[17] *In re Kibbe*,[18] and *In re Hardacre*[19] with which this Court disagreed in *Hanks*. And the Tenth Circuit Bankruptcy Appellate Panel's discussion in *Midkiff* relied heavily on the fact that the tax refunds at issue were generated from income earned during the term of the plan that would otherwise have gone to pay creditors if the debtors had not overwithheld.[20] This concern is no longer relevant in the post-BAPCPA Bankruptcy Code for above-median debtors because base income figures are mechanically calculated on a historical basis then projected into the future. Accordingly, the Court must hold that tax refunds no longer constitute projected disposable income under this particular theory.

### 2.  Deduction of Actual Tax Expenses Rather Than Full Withholdings

But this is not to say that the Debtors simply obtain a windfall. The Court finds meritorious the trustee's alternative argument that above-median debtors are only permitted to deduct their actually incurred future tax expenses on line 30 of Form B22C rather than the full amount of their withholdings. This particular theory was recently approved in *In re Balcerowski*,[21] and this Court finds the reasoning of that decision persuasive. As discussed in *Balcerowski*, § 707(b)(2)(A)(ii)(I) allows above-median debtors to deduct the "applicable"

---

[17]   340 B.R. 411 (Bankr. D. Utah 2006) (Thurman, J.).

[18]   342 B.R. 411 (Bankr. D.N.H. 2006).

[19]   338 B.R. 718 (Bankr. N.D. Tex. 2006).

[20]   *See also Midkiff*, 342 F.3d at 1202 n. 4 (stating that the "most sensible meaning" of projected disposable income in the pre-BAPCPA Bankruptcy Code "would include income that the debtors are likely to earn [in the future], taking account of any tax liabilities and refunds").

[21]   353 B.R. 581 (Bankr. E.D. Wis. 2006). The Court notes that this view is apparently in line with the view of the trustee in *Balcerowski*, who intended to abandon her pre-BAPCPA practice of requiring submission of tax refunds in favor of deducting actual tax expenses on Form B22C.

expenses under the Internal Revenue Services' National Standards and Local Standards but the "actual" expenses for categories specified as Other Necessary Expenses.  In turn, the Internal Revenue Manual deems taxes "necessary if they are for current federal, FICA, Medicare, state and local taxes."[22]  Form B22C's line 30 reflects this incorporated allowance by instructing debtors to "[e]nter the total average monthly expense that you **actually incur** for all federal, state, and local taxes, other than real estate and sales taxes, such as income taxes, self employment taxes, social security taxes, and Medicare taxes" (emphasis added).  Ultimately, the *Balcerowski* court concluded that above-median debtors are only permitted to deduct their actual anticipated tax expenses based on Schedule I income rather than whatever amount they chose to withhold from their paychecks.  The court did not, however, prescribe a particular method for performing this calculation.  It only required that "the debtor must subtract on line 30, as best he can estimate it, his actual expense, and leaves it to the parties to determine how best to make that estimate."[23]

This Court agrees with *Balcerowski*'s reasoning and conclusion that above-median debtors are only permitted to deduct the average monthly tax expenses they actually incur for all federal, state, and local taxes.[24]  The Court respectfully disagrees, however, with *Balcerowski*'s adherence to the majority position on the projected disposable income issue insofar as it requires

---

[22]   *Id.* at 584 (quoting Internal Revenue Manual ¶ 5.15.1.10) (internal quotes omitted).

[23]   *Id.* at 588.

[24]   This makes particular sense in light of the fact that the Bankruptcy Code now incorporates certain provisions of the Internal Revenue Code regarding offers-in-compromise.  The Internal Revenue Service would not allow taxpayers to effectively retain a savings account through overwithholding while accepting less than full payment on tax liabilities owed, nor will this Court permit debtors to manipulate their tax withholdings to understate their income.

the trustee to "look at the amount that results when one subtracts the debtor's actual tax expense (and other expenses) from his Schedule I income."[25] As this Court discussed in *Hanks*, Form B22C is dispositive of an above-median debtor's income and expenses absent a showing of "special circumstances" under § 707(b)(2)(B). And because disposable income in § 1325(b)(2) is determined in part by reducing "current monthly income" by actually incurred future tax expenses as incorporated by § 707(b)(2)(A)(ii)(I), the Debtors must subtract their *future* average monthly expenses for tax liability actually incurred from their *historical* income as calculated on Form B22C. This Court is fully aware that this might lead to the same kind of curious results that may follow from its projected disposable income analysis in certain circumstances, but it takes more than a harsh or illogical result before a court is permitted to interpret a statute other than according to its own terms.

The Debtors argued that, if the Court were to require the deduction of actually incurred tax expenses on line 30 of Form B22C, then they would prefer using the Form W-4 method of calculation instead of the Form 1040 method due to the purported difficulties with itemization. But just as the use of full withholdings on line 30 could unjustifiably misstate above-median debtors' income, so could the exclusion of otherwise available tax attributes. Such a practice makes especially little sense for debtors who found it in their self interest to claim certain tax attributes in a previous year but want to exclude them in a subsequent year for no other reason than additional ease in calculation.[26] Indeed, failing to claim tax attributes without a reasoned

---

[25]   *Balcerowski*, 353 B.R. at 590.

[26]   The Court notes the Debtors' concern that the line 30 tax expense may not be "actual" in the sense that it is an estimate, but this concern is a red herring. None of the actual expenses on Form B22C are "actual" in the sense of being necessarily and permanently true, just as none of the actual

foundation for doing so based on legitimate family or financial circumstances could raise serious questions about a debtor's good faith in proposing a plan. In sum, above-median debtors must make their best efforts to estimate their actually incurred tax expenses for purposes of line 30 on Form B22C, which must include all tax attributes to which such debtors would likely be entitled.[27]

Finally, it should be noted that the requirements of § 1325(b), including the entire projected disposable income calculus, are not triggered unless the trustee or the holder of an allowed unsecured claim objects to confirmation of a plan. With the guidance in this Memorandum Decision, the Court hopes that most parties in the future will be able to consensually resolve their tax-related disputes before confirmation with the Court being available to resolve issues about the appropriate calculation of tax expenses in individual cases.

In the present cases, no matter how the tax expenses are calculated, both Lawson and the Boyntons still have negative monthly disposable income on line 58 of Form B22C. Accordingly, Lawson's plan shall be confirmed as filed, and the Boyntons' plan shall be confirmed as filed and modified on the record at the supplemental hearing to include a lump sum contribution of the funds paid in to date. Attorney's fees of $2,750 are awarded at this time with leave granted to request additional fees up to $5,000 total in each case upon properly noticed applications.

---

numbers in Schedules I and J are necessarily and permanently true. They are estimates, albeit educated estimates based on the best information available to the parties. That is what the statute requires and all that it requires, although the Court certainly understands that the required calculations may be more difficult in some cases than in others depending on the debtors' financial and family circumstances.

[27] *Cf.* § 346 (involving, *inter alia*, the treatment of state and local taxes and claims to tax attributes).

### III. CONCLUSION

For the reasons set forth above, the Court holds that the "applicable commitment period" concept in § 1325(b)(4) is fundamentally irrelevant for above-median debtors with negative monthly disposable income. The Court also holds that above-median debtors are only permitted to deduct on line 30 of Form B22C their actually incurred future tax expenses unless, of course, the parties themselves agree to a different result such as the submission of future tax refunds as in pre-BAPCPA practice.

The Court hereby directs the trustee to submit confirmation orders forthwith in both the *Lawson* and *Boynton* cases in accordance with the filed plans as modified on the record.

-------------------------------------------END OF DOCUMENT-------------------------------------------

ORDER SIGNED

\_\_\_\_\_ooo0ooo\_\_\_\_\_

# SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the

Bankruptcy Noticing Center to each party listed below.

Justin C. Lawson
400 North Poco, 9-4
Roosevelt, UT  84066
    *Debtor*

Douglas D. Boynton
Cheryl L. Boynton
3738 South Moshier Lane
Salt Lake City, UT  84120
    *Debtors*

David T. Berry
Berry & Tripp
5296 South Commerce Drive
Suite 200
Salt Lake City, UT  84107
    *Counsel for the Debtors*

J. Vincent Cameron
47 West 200 South
Suite 600
Salt Lake City, UT  84101
    *Chapter 13 Trustee*

United States Trustee
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, Utah 84111